# FRANCIS A. BLANCHARD *versus* CHARLES D. COOLIDGE.

By an agreement entered into between a father and his son, the father was to carry on business in the name and on the account of the son, and as his agent, and the son was to give to the father one half of the profits, as a compensation for his services; but the business did not yield any profits, and no settlement of accounts was ever made between them. A former separate creditor of the father having attached certain property purchased by the father in the name of the son under this agreement, it was *held*, in an action of trover by the son against the attaching officer, that the father, upon his releasing all interest in the suit to his son, became a competent witness for him ; that the father had no interest in the property which could be attached by such creditor ; and that the attachment was tortious, and consequently amounted, in itself, to a conversion.

TROVER against a deputy sheriff, who had attached certain property alleged to belong to the plaintiff, on a writ issued in favor of Fowler Bragg and others against Nathaniel Blanchard. The writ was dated on July 21st, 1837.

The defendant pleaded the general issue, and justified upon the grounds, that the property belonged to Nathaniel Blanchard at the time of the taking, or that if he was not the sole owner thereof, he had an interest in it as a partner of the plaintiff.

The trial was before *Putnam* J.

No evidence was produced, showing that any demand of the property had been made of the defendant previously to the commencement of the action.

Nathaniel Blanchard was called as a witness by the plaintiff; but the defendant objected to his admission, on the ground that he was interested in the event of the suit.

It appeared, that some time in July or August, 1836, the plaintiff, who was the son of Nathaniel Blanchard, being then about twenty years of age, made a verbal agreement with his father, that the latter should carry on the business of manufacturing shoes in the name and on the account of the son, and as his agent, and that the son should give to his father one half of the profits as a compensation for his services ; that the property in question was a portion of the property purchased by the father in the name and as the agent of his son, under that agreement ; and that it was attached in a store kept by the father.

It further appeared, that the business had not yielded any profits ; and that no settlement of accounts had been made between the father and the son.

N. Blanchard thereupon released all his right and interest in the suit, to the plaintiff ; but no release was given by the plaintiff to the witness ; nor did it appear how much the witness was indebted to the plaintiff for any money which he had taken from the business and appropriated to his own use.

Under these circumstances, the witness was permitted to testify.

The witness thereupon testified, that the plaintiff had devoted himself wholly to the teaching of music, for two or three years past ; that just before the agreement was made, the witness had failed ; that he contributed no capital to carry on the business ; that he purchased unmanufactured stock in the name and on the credit of the plaintiff, and consigned manufactured articles to the venders, to be sold for his account ; and that he informed the persons with whom he dealt, that he was acting as agent of the plaintiff, and requested them to sell to him ; but that he had sold goods consigned to him by his friends on commission, for his own benefit.

The deposition of the plaintiff was introduced in evidence, by which it appeared, that he had had no charge of the business, and had contributed no capital to it ; and that he had received nothing therefrom.

It further appeared, that a balance of several hundred dollars was due from the plaintiff to the firm of H. Cobb & Co. of whom most of the purchases were made.

The defendant contended, that the action could not be maintained, for the following reasons :

1. Because the arrangement between the father and son was for the purpose of secreting property from attaching creditors, and was not a *bonâ fide* agreement.

2. Because, if the agreement was *bonâ fide*, still N. Blanchard was a copartner with the plaintiff as to third persons, he receiving one half of the profits.

3. Because the property attached being copartnership property, and N. Blanchard having an interest therein at that time,

the attachment was rightful ; and in order to make a conversion, a demand must have first been made of the defendant.

4. Because one partner cannot maintain trover against an officer who attaches the copartnership property.

But the jury were instructed, that the action could be maintained, notwithstanding the agreement in regard to profits between the plaintiff and his father ; that no demand was neces sary to constitute a conversion ; and that if they were satisfied, that the agreement was made in good faith, they must bring in a verdict for the plaintiff.

The jury returned a verdict for the plaintiff.

If these instructions were erroneous, and the Court should be satisfied that the verdict was against the weight of the evidence, the verdict was to be set aside, and a new trial granted ; otherwise judgment was to be rendered on the verdict.

*Brigham,* for the defendant.   The plaintiff was a copartner with his father as to third persons ; and cannot, therefore, maintain this action alone, to recover partnership property Gow on Partn. 17 ; *Turner* v. *Bissell,* 14 Pick. 194 ; *Dol* v. *Halsey,* 16 Johns. R. 34 ; *Purviance* v. *M'Clintee,* 6 Serg. & Rawle, 259 ; *Winship* v. *Bank of the United States,* 5 Peters's Sup. Court R. 561.

But if trover will lie in favor of the plaintiff alone, still there should have been a demand ; for the officer had a right to attach the interest of N. Blanchard, if he was a partner. *Nelson* v. *Merriam,* 4 Pick. 249 ; *Nixon* v. *Jenkins,* 2 H. Bl. 135.

If N. Blanchard was a partner, he was then interested in the event of the suit, and is incompetent as a witness.

*Fletcher,* for the plaintiff.   There was no partnership between the plaintiff and his father *inter se.*   The father might, perhaps, on contracts made *after* the agreement, be liable to third persons, as a copartner, he being interested in the profits of the business.   But he had no interest in the property attached.   Gow on Partn. 11, 12 ; *Smith* v. *Watson,* 2 Barn. & Cressw. 401 ; *Simpson* v. *Feltz,* 1 M'Cord's Ch. R. 213 ; *Hesketh* v. *Blanchard,* 4 East, 144.   If there was no partnership between the father and the son *inter se,* and the father had no interest in the property, then the attachment was tortious,

Blanchard
*v.*
Coolidge.

*April 5th*

and no demand was necessary.  *Woodbury* v. *L' ng*, 8 Pick. 543.

WILDE J. delivered the opinion of the Court.  The defendant's counsel, at the trial, objected to the competency of one of the plaintiff's witnesses, but the objection, as we understand, is not relied on, and certainly cannot be sustained.  The witness having released all his interest in this suit, if any he had, to the plaintiff, cannot profit by his recovery of judgment against the defendant.  On the contrary, whatever interest he had, after giving the release, was in favor of the defendant.

The defendant's counsel then moved for a new trial, because the verdict was against the weight of the evidence, and because the instructions to the jury were not correct as to the legal effect of the evidence.

As to all the important facts in the case, we are of opinion, that the evidence introduced by the plaintiff is very satisfactory, and if the witnesses are to be believed, conclusive.  It was proved, that the property attached by the defendant as the property of Nathaniel Blanchard, was in fact purchased on the credit of the plaintiff, and was his property ; and that Nathaniel Blanchard acted as his agent ; and was to receive one half of the profits for his services.  There is no contradictory evidence as to these facts.

On these facts, however, (admitting them to be well proved,) the defendant's counsel contend, that Nathaniel Blanchard is to be considered as a partner of the plaintiff, and that thus he had an attachable interest in the property in dispute.  If this argument can be maintained, the instructions to the jury were incorrect, and the defendant is entitled to a new trial.

It is clear from the evidence, that the plaintiff and his father, Nathaniel Blanchard, were not partners *inter se* ; nor were they held out as such to those who dealt with them.  The business was transacted in the name of the plaintiff, and the father acted as his agent.  It is true that, by their agreement, the latter was to receive from the plaintiff one half of the profits as a compensation for his services ; and, generally, he who participates in the profits of a trade, is answerable to creditors dealing with him and others in such trade, although they may not be partners *inter se* ; for by taking a part of the profits he diminishes

the fund to which the creditors have a right to look for the se-
curity and satisfaction of their demands.

But there is a distinction between an agreement to share
the profits of a trade indefinitely, as profits, and an agreement
with an agent to allow him a certain share of the profits, as a
compensation for his services. If he is allowed no more than
a fair compensation, it is immaterial to the creditors, whether
he is allowed wages or a share of the profits. *Turner* v. *Bis-
sell*, 14 Pick. 194 ; Gow, 19 ; *Dry* v. *Boswell*, 1 Campb.
329.

But it is not necessary to decide, in the present case, wheth-
er Nathaniel Blanchard is liable as a partner or not. For, ad-
mitting that he is so liable, it does not follow that he has any
interest in the stock, which was attachable by his separate
creditors, for the security of debts contracted before his con-
nexion with the plaintiff in business. They could only attach
his share of the property which might remain to him after
winding up the concern ; and it appears that he had no such
share. It was proved, that no profits had been earned, and
consequently he had no right to any part of the stock. And
this appears to us to be a conclusive objection to the defence.

But there is another objection to the defence, which is
equally conclusive. By the agreement between the plaintiff
and his father, the stock was to be the property of the plaintiff,
and his father in no event was to have any title to it. He
could claim only his share of the profits, and had no right to
appropriate to his own use any part of the capital stock. This
point was decided in the case of *Smith* v. *Watson*, 2 Barn. &
Cressw. 401. In that case an agreement was proved between
A and B, that the latter, being a broker, should purchase goods
for the former, and, in lieu of brokerage, should receive for his
trouble a certain portion of the profits, arising from the sale
of the goods, and should bear a proportion of the loss. And
it was held, that although B's right to share in the profits ren-
dered him liable to third persons as a partner, in respect to
transactions arising out of the adventure, yet he had no interest
in the property which was the subject of the adventure.

We can perceive no reason for doubting the correctness of
this decision. To creditors who deal with partners, it is im-

Blanchard
*v.*
Coolidge.

material whether they own the stock jointly, or one owns the whole. In either case the stock is liable for the debts of the firm.

On either ground, therefore, it appears clear, that Nathaniel Blanchard had no attachable property in the goods taken by the defendant, that the taking was tortious, and consequently amounted to a conversion.

*Judgment on the verdict.*